19620. PARKER *v.* BATCHELOR *et al.*

DECIDED DECEMBER 13, 1929.

*M. Felton Hatcher, Marx Kunz,* for plaintiff in error.
*R. D. Feagin,* contra.

JENKINS, P. J. The sole question to be determined in this case is whether or not a person selected in writing by a majority of the next of kin of an intestate whose estate is insolvent is entitled to administer the estate in preference to a creditor of the intestate..

Counsel for the plaintiff in error cite the decision of the superior court by Judge Berrien, in *Sturges* v. *Tufts,* reported in *R. M. Charlton's Reports,* 17. The decisions there reported while entitled to great respect as emanating from learned jurists are not binding as precedents. In that case Judge Berrien held that "when an estate is not competent, or barely so, to the payment of debts, in granting administration, a creditor will be preferred to the next of kin." The decision of Judge Berrien is based upon the theory that since the payment of debts must precede distribution, the next of kin can not have an interest in an insolvent estate, and, consequently, has no claim to the administration. That case was referred to and distinguished by the Supreme Court in *Lynch* v. *Lively,* 32 *Ga.* 575. In the latter case the Supreme Court referred to the *Tufts* case as being one in which there was no contest upon the question of the insolvency of the estate, but held that in the case before them there was an issue on that question, and

that the evidence failed to show insolvency. However, in that case the Supreme Court specifically declined to rule upon the question decided in the *Tufts* case, the language of the opinion being as follows: "We do not now rule that under all circumstances (e. g. the admitted insolvency of the intestate) the heir at law shall be preferred over a creditor in a contest for administration. But we do hold that in cases of doubtful insolvency, depending upon the solvency of divers debtors of the intestate, or upon the validity of intestate's title to property held by him at the time of his death, but claimed by strangers, or upon the validity of disputed claims against his estate, or upon like doubtful questions, insolvency should not be recognized as a sufficient ground of caveat against the claim of the heir at law to the administration. In such cases the court would be led into the trial of issues too various—of issues no one of which can properly be tried unless a qualified representative of the intestate join in them." The earliest statute law in Georgia governing the appointment of administrators seems to be the act of 1789 (Cobb's Dig. 305, § 59), which provides that "the same rules shall obtain in regard to the granting of letters of administration on intestates' estates, as are before mentioned for the distribution thereof; and should any case arise, which is not expressly provided for by this act, respecting intestates' estates, the same shall be referred to and determined by the common law of this land, as it hath stood since the first settlement of this State." The same act carried, in section 1 (Cobb's Dig. 291, § 25), the rules of descent and distribution, but no mention is made in either section of the rights of a creditor. By section 8 of the act of February 29, 1764 (Cobb's Dig. 303, § 53), it is provided that "no letters of administration shall hereafter be granted by the ordinary of this province to any person or persons whomsoever, as principal creditor or creditors to any intestate, but upon special trust and confidence, and for the benefit of all and singular the rest of the creditors;" but no provision is there made as to the relative rights of creditors and next of kin to the administration, either in case of solvency or of insolvency of the estate. It might be of benefit, in this connection, to note the common-law rules governing the appointment of administrators, which, it will be observed, are in substantial accord with those now in force under our Code. "But if the deceased died wholly intestate, without making either

will or executors, then general letters of administration must be granted by the ordinary to such administrator as the statutes of Edward the Third and Henry the Eighth, before mentioned, direct. In consequence of which we may observe: 1. That the ordinary is compellable to grant administration of the goods and chattels of the wife, to the husband, or his representatives; and of the husband's effects, to the widow, or next of kin; but he may grant it to either, or both, at his discretion. 2. That, among the kindred, those are to be preferred that are the nearest in degree to the intestate; but, of persons in equal degree, the ordinary may take which he pleases. 3. That this *nearness* or propinquity of degree shall be reckoned according to the computation of the civilians; and not of the canonists, which the law of England adopts in the descent of real estate: because, in the civil computation, the intestate himself is the *terminus, a quo* the several degrees are numbered; and not the common ancestor, according to the rules of the canonists. And therefore in the first place the children, or (on failure of children) the parents of the deceased, are entitled to the administration; both which are indeed in the first degree; but with us the children are allowed the preference. Then follow brothers, grandfathers, uncles or nephews (and the females of each class respectively), and, lastly, cousins. 4. The half blood is admitted to the administration as well as the whole; for they are of the kindred of the intestate, and only excluded from inheritances of land upon feodal reasons. Therefore the brother of the half blood shall exclude the uncle of the whole blood; and the ordinary may grant administration to the sister of the half, or the brother of the whole blood, at his own discretion. 5. If none of the kindred will take out administration, a creditor may, by custom, do it. 6. If the executor refuses, or dies intestate, the administration may be granted to the residuary legatee, in exclusion of the next of kin. 7. And, lastly, the ordinary may, in defect of all these, commit administration, (as he might have done before the statute of Edward III) to such discreet person as he approves of: or may grant him letters *ad colligendum bona defuncti,* which neither makes him executor nor administrator; his only business being to keep the goods in his safe custody, and to do other acts for the benefit of such as are entitled to the property of the deceased." 2 Blackstone, 504; 1 Chitty's Blackstone, 421. It will thus be seen, that at com-

mon law the next of kin was entitled to administration in preference to a creditor, and that a creditor could take out administration only in the event none of the kindred would do so.

In the *Tufts* case, supra, Judge Berrien seems to have based his decision upon the common-law rule laid down for the appointment of an administrator *cum testamento annexo,* since he says that in such case the administration is "committed to a residuary legatee, in preference to the next of kin, because they have in that case no interest." But it would seem that under the common law and express provisions of statutes administrators under wills were appointed.

It is worthy of note that both the decision of Judge Berrien in the *Tufts* case (January term, 1811), and that of Justice Jenkins in *Lynch* v. *Lively* (May term, 1861), were handed down prior to the adoption of the Code of 1861, which became operative January 1, 1863. In that Code, § 2461, the rules for the appointment of administrators were laid down almost (and, so far as this case is concerned, exactly) as they now exist. It was provided that "the husband or wife surviving, irrespective of age, shall be first entitled," and the "next of kin, at the time of the death, according to the law declaring relationship and distribution, shall be next entitled;" and that "if there be several of the next of kin, equally near in degree, the person selected in writing by a majority of those interested as distributees of the estate, and who are capable of expressing a choice, shall be appointed." It was further provided that *"where no application is made by the next of kin,* a creditor may be appointed." (Italics ours.) It would thus seem to have been the plain intent and purpose of the codifiers to provide that in all cases the next of kin, or the person selected in writing by a majority of the next of kin, should, as a matter of right, have preference over a creditor.

It is argued by counsel for the plaintiff in error, in his able and exhaustive brief, that stress must be laid upon the word "distribution," as contained in subsection 2 of the Civil Code (1910), § 3942, and upon the word "distributees," as contained in the third subsection of § 3943, and that since the next of kin are not, and can not be, distributees of an estate which does not amount to enough to pay the debts of the intestate, the provisions of these two subsections can not have application in the case at bar, and a

person selected by the next of kin can not be entitled to preference over a creditor. But the subsection 2 referred to provides that the next of kin "according to the law declaring relationship *and* distribution" is entitled, next after the husband or widow, to the appointment. It seems clear that the distributees mentioned in subsection 3 refers to "next of kin equally in degree," who are thus entitled to select the administrator, and that the "distributees" as mentioned by the code section are such as are entitled to the estate by virtue of being next of kin.

It is interesting also to note that in the first adjudicated case after the adoption of the first code, *Mandeville* v. *Mandeville*, 35 *Ga.* 243, the Supreme Court said: "Where a majority of the next of kin select, under the code, a fit person for administrator, the ordinary must appoint him." The law there announced has been substantially followed in numerous decisions by the Supreme Court and by this court. In none of these cases has there been any intimation that the rule would not be made to apply in case an estate is insolvent.

As has been seen, the plain, unqualified, and mandatory provision of the statute is but a substantial codification of the common law. Both under the common law and under the statute, the next of kin, with exception save as to fitness, is given the right to administer. Much might be said as to the wisdom and propriety of the rule when applied to insolvent estates, but to depart from the plain and unequivocal mandate of the statute, in order to read into it something which might perhaps better conform to our personal ideas of exact justice or propriety, is not within the province of this court. Whatever may have been the sufficient or inadequate reason in the minds of the lawmakers, what they actually provided seems plain and unmistakable, and by that we are bound. It may be that the right to administer, with its attendant emoluments, is to be regarded as in the nature of an interest in the estate belonging to the next of kin. If so, the next of kin, even of an insolvent intestate, are not entire strangers to the estate. Nor does it follow, if such a right be construed as an interest, that such an interest would be subject to the claims and demands of creditors. It may be the purpose and intent of the law that whatever might be the condition of the estate, the right to administer, if nothing else. remains in the next of kin as an inherent right and benefit.

674

The trial court properly directed a verdict in favor of the caveator, who had been selected by a majority of the next of kin to administer the estate.

Judgment affirmed. *Stephens and Bell, JJ., concur.*